**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SHANDS TEACHING HOSPITAL &
CLINICS, INC. d/b/a
UF HEALTH SHANDS JACKSONVILLE,
a Florida non-profit corporation,

      Plaintiff,

v.                                                                          Case No. 3:19-cv-579-J-32MCR

ALEX AZAR in his official capacity as,
SECRETARY OF THE UNITED STATES
DEPARTMENT OF HEALTH & HUMAN SERVICES,
and NADIA CARO,

      Defendants.

_____/

**MOTION TO DISMISS AMENDED COMPLAINT AND INCORPORATED**
**MEMORANDUM OF LAW**

Secretary Alex M. Azar, II of the Department of Health and Human Services

("HHS") files this motion to dismiss the Complaint filed by Plaintiff Shands Teaching

Hospital & Clinics, Inc. d/b/a UF Health Shands Jacksonville ("Shands") pursuant to

Federal Rule 12(b)(1).  The Court should dismiss the claims against HHS for lack of

subject matter jurisdiction because Shands lacks standing and there is no ripe case or

controversy between the parties.

**MEMORANDUM**

**I.**     **INTRODUCTION**

Shands sues HHS and Nadia Caro for a declaratory judgment and injunctive relief

from producing documents in response to a request by Ms. Caro pursuant to state law.

1

Shands asserts that the documents requested by Ms. Caro are both privileged and confidential under the federal Patient Safety Quality Improvement Act of 2005 ("PSQIA"), which is implemented by HHS.  Shands incorrectly asserts that, if it complies with Ms. Caro's request, HHS has no enforcement discretion and must impose a civil monetary penalty on Shands for impermissibly disclosing Patient Safety Work Product ("PSWP") in violation of the PSQIA.  HHS is not involved in the dispute between Shands and Ms. Caro.  HHS administers and enforces the PSQIA.

Shands specifically requests that this Court declare, as a matter of law, that:

a.      The documents identified by Shands as PSWP and as potentially responsive to Ms. Caro's February 20 letter are privileged and confidential under the PSQIA, are not subject to any exceptions under the PSQIA, and are not subject to disclosure.

b.      The PSQIA preempts Amendment 7 to the Florida Constitution insofar as Amendment 7, as interpreted by the Florida Supreme Court, requires the disclosure of PWSP that is deemed confidential and privileged under PSQIA.

c.      Ms. Caro's assertion of her Amendment 7 rights, as interpreted by the Florida Supreme Court, violates Shands' right to equal protection under the United States Constitution.

Dkt. 18, ¶ 50.

In sum, Shands mostly wants an advisory opinion from this Court on how the PSQIA applies to Shands here.  Federal courts, however, do not issue advisory opinions

on how to apply federal statutes that Congress entrusted to HHS.  There must be a plaintiff with a live case or controversy and an injury-in-fact that is fairly traceable to HHS's conduct, a requirement which is not met here.

This Court lacks Article III jurisdiction for three reasons.  First, Shands alleges only a potential future injury-in-fact and a potential future case or controversy, both of which are contingent on Shands producing the documents to Ms. Caro *and* HHS enforcing the PSQIA against Shands.   HHS, however, has not taken any action whatsoever to enforce the PSQIA against Shands in connection with the requested documents.  Nor has HHS ever seen those documents.  HHS knows only that Shands alleges that the documents it identified constitute PSWP that are protected from disclosure under the PSQIA.  The Constitution requires more.   Second, although HHS denies Shands is entitled to a declaratory judgment, the parties do not disagree that preemption should apply, so, there is no ripe case or controversy between the parties.  Third, Plaintiff's argument that the Florida Supreme Court's interpretation of Amendment 7 violates the Equal Protection Clause does not create a controversy with HHS.  Accordingly, the action should be dismissed as to HHS.

## II.   BACKGROUND

### A.   Article X, Section 25, Florida Constitution (Amendment 7)

In 2004, Florida voters passed Amendment 7 — the "Patients' Right to Know About Adverse Medical Incidents" provision — which added Article X, Section 25 to the Florida Constitution.  Art. X, § 25, Fla. Const.  Amendment 7 provides that "patients have a right to have access to any records made or received in the course of

business by a health care facility or provider relating to any adverse medical incident."
*Id.*  It requires that, "[i]n providing such access, the identity of patients involved in the incidents shall not be disclosed, and any privacy restrictions imposed by federal law shall be maintained."  *Id.*  Further, Amendment 7 establishes that "[t]he phrase 'have access to any records' means, in addition to any other procedure for producing such records provided by general law, making the records available for inspection and copying upon formal or informal request by the patient or a representative of the patient . . . ."  *Id.*

Amendment 7 is implemented at section 381.028 of the Florida Statutes.  Section 381.0025 provides that "[a]ny person who violates any of the provisions of this chapter, any quarantine, or any rule adopted by the department under the provisions of this chapter is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083."  Fla. Stat. § 381.0025.

**B.    The Patient Safety Act**

Passed in 2005, the PSQIA established a system under which health care providers can voluntarily collect and report PSWP to Patient Safety Organizations (PSOs).  *See* 42 U.S.C. §§ 299b-21 – § 299b-26.[1]  The PSOs aggregate and analyze the PSWP and provide feedback to the providers to help prevent future errors.  The

---

[1] Pursuant to PSQIA, HHS promulgated a "Patient Safety Rule" in 2008.  *See* 42 C.F.R. Pt. 3, §§ 3.10 – 3.552; 73 Fed. Reg. 70732 – 70814.  Under the Rule, the Agency for Health Care Research and Quality has responsibility for listing and delisting of PSOs. HHS provided additional guidance regarding PSQIA in 2016. *See* 81 Fed. Reg. 32655 – 32660, "Patient Safety and Quality Improvement Act of 2005—HHS Guidance Regarding Patient Safety Work Product and Providers' External Obligations." (May 2016 Guidance).

providers receive broad privilege and confidentiality protections for any PSWP that they report to the PSOs.  Moreover, the PSQIA states that: "[n]otwithstanding any other provision of Federal, State, or local law . . . [PSWP] shall be confidential and shall not be disclosed."  42 U.S.C. § 299b–22(b).  This express preemption clause in the Federal Act demonstrates Congress's intent to supersede any state law requiring the production of documents that meet the definition of PSWP.  *See* 73 Fed. Reg. 70,732, 70,774 (Nov. 21, 2008) (stating that the Patient Safety Act "generally preempt[s] State or other laws that would permit or require disclosure of information contained within patient safety work product").

Further, the PSQIA authorizes HHS to penalize providers for noncompliant disclosures.   HHS may penalize providers that disclose PSWP outside of the PQSIA process.  *See* 42 U.S.C. 299b-22(f).  However, "[o]nce a knowing or reckless violation of [PSQIA] has been established, the Secretary still retains discretion as to whether to impose a penalty for a violation and may elect not to do so."  73 Fed. Reg. 70,732, 70,791 (Nov. 21, 2008) (emphasis added).   The Secretary provides an example as to when he would exercise enforcement discretion in the preamble to the PSQIA Proposed Rule.  HHS explains that it is not the Secretary's intention to impose a civil monetary penalty on a provider ordered by a court to produce PSWP where the provider has deliberately and in good faith undertaken reasonable steps to avoid such production and is, nevertheless, faced with compelled production or being held in contempt of court.  73 Fed. Reg. 8,112, 8,148 (Feb. 12, 2008).  As a result, the likelihood that HHS will initiate an enforcement action against a provider for disclosing PSWP pursuant to a court order

– let alone find a violation and impose a civil monetary penalty – is, at most, de minimis.

The PSQIA sets forth three ways in which information may be deemed PSWP: (1) a provider prepares the information for reporting to a PSO and it is, indeed, reported to the PSO; (2) a PSO develops the information to conduct patient safety activities; or (3) the information identifies or constitutes the deliberations or analysis of, or identifies the fact of reporting pursuant to, a patient safety evaluation system (PSES).  *See* 42 U.S.C. § 299b-21(7).  The first way providers can create PSWP is through a method sometimes referred to as the "reporting pathway."  For information to become PSWP through the reporting pathway, it must be prepared for the purpose of reporting it to the PSO. *See* 73 Fed. Reg. 70739 (Nov. 21, 2008) (stating "information may become patient safety work product if it is assembled or developed by a provider for the purpose of reporting to a PSO and is reported to a PSO").  Under the Patient Safety Rule, which was promulgated on November 21, 2008, the reporting pathway allows for information that is documented as collected within the provider's PSES to be constituted as PSWP and thus privileged and confidential before it is reported to a PSO. 73 Fed. Reg. 70732 (codified at 42 C.F.R. Pt. 3 § 3.20).

The statute excludes from the definition of PSWP "a patient's medical record, billing and discharge information, or any other original patient or provider information." 42 U.S.C. § 299b-21(7)(B)(i); 42 C.F.R Pt. 3 § 3.20(2)(ii).  Also excluded from the definition is "information that is collected, maintained, or developed separately, or exists separately, from a [PSES]."  73 Fed. Reg. 70740 (Nov. 21, 2008) (stating "[p]atient

safety work product does not include information that is collected, maintained, or developed separately or exists separately from, a patient safety evaluation system. This distinction is made because these and similar records must be maintained by providers for other purposes."). Thus, information prepared for purposes other than reporting to a PSO is not PSWP under the reporting pathway. *See id.*

Further, original patient and provider records, such as a patient's medical record, billing information, and discharge information, are not PSWP. *See* 42 U.S.C. § 299b-21(7)(B)(i). In the May 2016 guidance, HHS also provided that "original provider records," as used in the Patient Safety Rule, includes records that are required by a provider to meet any Federal, state, or local public health or health oversight requirement and may include records maintained by a provider, whether inside or outside of the provider's PSES. *See* 81 Fed. Reg. 32658 (May 24, 2016). Such documents and records do not qualify as PSWP even when they are developed or maintained in a provider's designated PSES. Accordingly, the fact that information was collected in a PSES is a *necessary* condition for the privilege, but it is not a *sufficient* condition. *See* 42 U.S.C. § 299b-21(7)(B)(i)-(ii).

**C.    The Florida Supreme Court decision in *Charles II***

In *Charles v. Southern Baptist Hospital of Florida, Inc. ("Charles II")*, the Florida Supreme Court held that adverse medical incident reports requested by a medical malpractice plaintiff were not PSWP "because Florida statutes and administrative rules require providers to create and maintain them, and thus, they were not created solely for the purpose of submission to a patient safety evaluation system." 209 So. 3d 1199, 1216

(Fla. 2017). The trial court agreed with the plaintiff that the PSQIA "protects only documents created solely for the purpose of submission to a patient safety organization," while the appellate court found that such documents were protected if they existed only in a "patient safety evaluation system." *Id.* at 1206. Analyzing the statute, the Florida Supreme Court agreed with the plaintiff that the "Federal Act expressly preserves and incorporates, rather than preempts, a provider's reporting and recordkeeping obligations under state law," and found that "Congress carved out broad exceptions to the Federal Act's definition of [PSWP]." *Id.* at 1210 (citations omitted).  Further, the Florida Supreme Court concluded in dicta that mandatory state disclosure laws were not preempted by the Federal Act.  *Id.* at 1214-15.

### D. Ms. Caro requests PSWP

On February 20, 2019, Ms. Nada Caro sent a letter to Shands requesting "all adverse medical incident documents" relating to her care, including "any and all documents put in a patient safety work product system (PSES) as patient safety work-product (PSWP)."  Dkt. 18 at ¶¶ 9-10.  Shands is in possession of materials that Ms. Caro would likely believe is responsive to the request, which remains pending.  *Id.* at ¶ 11.  The materials exists within Shands' PSES.  *Id.*

## III. ARGUMENT

### A. Dismissal is required because Shands lacks Article III standing and there is no case or controversy ripe for adjudication.

Standing and ripeness present questions of subject matter jurisdiction that should be resolved at the motion to dismiss phase.  *National Park Hospitality Ass'n v. Dep't of*

*Interior*, 538 U.S. 803 (2003); *Warth v. Seldin*, 422 U.S. 490 (1975); *Blanchette v. Connecticut General Ins. Corps.*, 419 U.S. 102 (1974).

### 1.      Shands lacks standing.

The "irreducible constitutional minimum of standing" requires the plaintiff to meet three prongs: an (1) injury-in-fact (2) fairly traceable to the complained-of conduct that is (3) likely to be redressed by a favorable decision by the Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Because Shands fails to meet even the first prong, we do not analyze, and the Court has no reason to reach, the second and third prongs.

Standing requires the plaintiff to suffer an injury in fact, which "must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Clapper v. Amnesty Int'l USA,* 133 S. Ct. 1138, 1147 (2013). Pre-enforcement review is permissible "under circumstances that render the threatened enforcement sufficiently imminent." *Driehaus*, 134 S. Ct. at 2342-43 (citing a prior case where a plaintiff's companion was prosecuted for the same conduct plaintiff planned to undertake and another where 150 people had been charged under the same statute for the same conduct as the plaintiff). In *Dreihaus*, plaintiffs challenged an Ohio statute proscribing false statements during elections; the enforcing agency previously found probable cause for the same action that plaintiffs planned to take in the future, and "past enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'" *Id*. at 2345 (citing *Steffel v. Thompson*, 94 S. Ct. 1209 (1974)). In addition, the Supreme Court observed that the commission enforcing the

statute handles about 20 to 80 false statement complaints each year, which can be brought by political opponents. *Id.*   Contrary to the facts here, in *Driehaus*, "the prospect of future enforcement [was] far from 'imaginary or speculative.'" *Id.* (citing *Babbitt v. Farm Workers*, 99 S. Ct. 2301 (1979)).

Shands does not allege that HHS imposes civil monetary penalties for disclosures of PSWP in all cases as a general practice or that HHS has ever initiated an enforcement action—much less imposed penalties against a provider—for disclosing PSWP pursuant to a state court order.   This is unsurprising, as HHS explains in its Patient Safety Rule that it exercises enforcement discretion and imposes penalties only in appropriate cases.

Shands instead argues that HHS has completely misread the underlying statue, which supposedly grants HHS no enforcement discretion whatsoever.   According to Shands, the word "shall" at 42 U.S.C. § 299b-22(f)(1) requires HHS to initiate an enforcement action and impose a civil monetary penalty whenever PSWP is disclosed—even if that disclosure is made solely to comply with a state court order.

Shands' interpretation is contrary to the text of the statute, which links civil monetary penalties to the *mens rea* of the health care provider, and authorizes the Secretary to compromise civil monetary penalties.  Section 299b-22(f)(1) states that "[s]ubject to paragraphs (2) and (3), a person who discloses identifiable patient safety work product in knowing, or reckless violation of subsection (b) shall be subject to a civil monetary penalty of not more than $10,000 for each act constituting such violation."  42 U.S.C. § 299b-22(f)(1).  Paragraph 2 then cites 42 U.S.C. § 1320-7a, which states that "[c]ivil monetary penalties and assessments imposed under [the Federal Act] *may be*

*compromised by the Secretary*."  42 U.S.C. § 1320a–7a(f) (emphasis added).  The statute is plain on its face:  the Secretary may exercise enforcement discretion and forego the imposition of civil monetary penalties.[2]

In addition, Shands' interpretation is contrary to Supreme Court precedent, which has found that "shall" does not necessarily require enforcement.  Specifically, in *Town of Castle Rock v. Gonzales*, a police department allegedly failed to follow state law that said a police officer "shall arrest" a person who the police officer has probable cause to conclude violated a restraining order.  545 U.S. 748, 759 (2005).  Relying on the "deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands," the Supreme Court found that the Colorado law did not make enforcement of restraining orders "*mandatory*."  *Id.* at 760 (emphasis in original).  The same presumption of enforcement discretion applies here.

Unfortunately, a recent decision of this Court found that the statute compels the Secretary to impose penalties on a provider that produces PSWP in compliance with a state court order.  Specifically, in *Florida Health Sciences Center, Inc. v. Azar*, the Court described the penalty as "mandatory" without addressing Paragraph 2 of the statute.  No. 8:18-cv-238-T-30CPT, at *7 (M.D. Fla. Sept. 5, 2019).  Ex. A.  While § 299b-21(f)(1) says a person who knowingly discloses "*shall* be subject to a civil monetary

---

[2] Not only is Shands' argument unsupported by the statute, but it also makes little sense from a policy perspective.  Shands would have this Court oust HHS of its enforcement discretion, and convert the PSQIA into a strict-liability regime.  However, a nationwide strict liability regime would require HHS to prosecute entities covered under the PSQIA it otherwise would not pursue and, as a result, expose entities to civil monetary penalties to which they would otherwise not be subject.  The better approach is to maintain fidelity to the statutory text.

penalty," Paragraph 2 says the provision of § 1320a-7a(f), which allows for compromise of penalties, "*shall* apply to the civil monetary penalties under this subsection" (emphasis added).  The Government disagrees with the Court's interpretation of the statute in *Florida Health Sciences Center* because it fails to give meaning to Paragraph 2.

To the extent the statute is ambiguous, the Secretary's interpretation in the Patient Safety Rule is entitled to deference.  *See, e.g.*, *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 104 S. Ct. 2778 (1984).  The regulatory text authorizes the Secretary to settle any issue or case or to compromise any penalty. 42 C.F.R. § 3.416.  In addition, the preamble to the Patient Safety Rule states expressly that the Secretary still retains discretion as to whether to impose a penalty for a knowing or reckless violation and may elect not to do so.  *See, e.g.*, 73 Fed. Reg. 70,732, 70,791 (Nov. 21, 2008) (stating that "[o]nce a knowing or reckless violation has been established [HHS] still retains discretion as to whether to impose a penalty for a violation and may elect not to do so."); 73 Fed. Reg. 8,112, 8,158 (Feb. 12, 2008) (stating that "[e]ven in cases that constitute violations of the confidentiality provisions, the Secretary may exercise discretion.").  The Secretary did not create a strict liability regime.

Regardless, Shands may not establish standing by speculating that it may be subject to some injury in the future.   *See, e.g.*, *Clapper v. Amnesty Int'l USA,* 133 S. Ct. 1138, 1147 (2013) ("stating that "[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is *certainly* impending.") (emphasis in original) (internal citations omitted).  No state court action

has yet been filed, Ms. Caro has not filed a motion to compel, nor has Shands been ordered to produce the alleged PSWP.  None of these predicates to an injury to Shands are close to imminent.

Moreover, even if HHS were to initiate an enforcement action against Shands at some point in the future, Shands could seek administrative and judicial review before any civil monetary penalty would become final and binding.[3]  Shands could not "manufacture standing" by choosing to forego an administrative appeal, thereby allowing a civil monetary penalty to become final, and inflict harm on itself based on fears of a hypothetical future harm.  *See Clapper*, 133 S. Ct. at 1143.

The Northern District of Florida was presented with the same question last year in another action filed by Shands, and dismissed for lack of subject matter jurisdiction because there was no live case or controversy.  In *Shands v. Azar*, No. 1:17-cv-245 (N.D. Fla. June 22, 2018), the court relied on *Driehaus* and found that the threatened harm was "totally conjectural" and "dependent on some future state court order requiring disclosure of the requested records and on Defendant Azar, in his discretion, choosing to

---

[3]  A person adversely affected by a proposed civil monetary penalty would be entitled to a hearing before an administrative law judge (ALJ).  *See* 42 C.F.R. § 3.504. ALJ decisions are subject to review by the HHS Departmental Appeals Board (Board).  *See* 42 C.F.R. § 3.548.  Following an adverse decision by the Board, an adversely affected person may obtain a review of the final determination of HHS in the United States Court of Appeals for the circuit in which the person resides.  *See* 42 U.S.C. § 299b-22 (incorporating by reference 42 U.S.C.A. § 1320a-7a).

commence penalty proceedings." Ex. B at pp. 4-5. Without any action by HHS, Shands' claims were not ripe in that action, *id.* at p. 6, nor are they ripe here.[4]

For the above reasons, and consistent with the ruling in the Northern District of Florida, Shands lacks standing, and the action should be dismissed.

### 2. No case or controversy exists between Shands and HHS regarding preemption.

HHS agrees with Shands that the PSQIA preempts Amendment 7 insofar as Amendment 7, as interpreted by the Florida Supreme Court, requires the disclosure of PSWP that is deemed confidential and privileged under the PSQIA. HHS further agrees with Shands that the privilege and confidentiality protections afforded by the PSQIA should apply to all PSWP held by licensed health care providers in Florida in the same way these protections apply to PSWP held by providers across the country. However, HHS denies Shands is entitled to a declaratory judgment because there is no dispute between the parties.

"The Supremacy Clause of Art. VI of the Constitution provides Congress with the power to preempt state law." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368 (1986). "State action may be foreclosed by express language in a congressional enactment . . . ." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001) (citations omitted).

---

[4] In response to a Motion for Reconsideration, the Northern District of Florida distinguished the *Florida Health Science Center* action here in the Middle District of Florida, which Judge Moody let proceed because, in that case, a state court lawsuit was pending and a discovery motion or order compelling production of PSWP were potentially imminent. Ex. C at pp. 3-4 (referring to *Florida Health Science Center*, 8:18-cv-238-T-30CPT (M.D. Fla.)).

Here, the PSQIA states that: "[n]otwithstanding any other provision of Federal, State, or local law . . . [PSWP] shall be confidential and shall not be disclosed." 42 U.S.C. § 299b–22(b). This express preemption clause in the PSQIA demonstrates Congress's intent to supersede any state law requiring the production of documents that meet the definition of PSWP. *See* 73 Fed. Reg. 70,732, 70,774 (Nov. 21, 2008) (stating that the Patient Safety Act "generally preempt[s] State or other laws that would permit or require disclosure of information contained within patient safety work product"). It is clear that all federal and state courts must apply the PSQIA to determine whether documents that are in dispute during discovery are privileged.

In *Charles II*, the Florida Supreme Court concluded incorrectly that mandatory state disclosure laws were not preempted by the Federal Act. 209 So.3d at 1212. *Charles II* turns the Supremacy Clause on its head by allowing general Florida document disclosure laws to nullify the federal privilege and confidentiality protections for PSWP. States may not eliminate the privilege and confidentiality protections in the Federal Act—and gut the federal program designed to improve health outcomes through voluntary remediation of preventable errors—by foisting state disclosure requirements on providers. The potential programmatic impact is significant because *Charles II* has no limiting principle. The scope of records covered by Amendment 7 is unbounded and could require the wholesale production of PSWP in litigation across Florida.

HHS takes no position whether the documents requested by Ms. Caro are privileged PSWP. If the documents are PSWP, however, the PSQIA makes clear that any state law that requires Shands to disclose PSWP is preempted, thereby affording

Shands the same protections the PSQIA provides to health care providers outside

Florida.  42 USC § 299b–22(b).  As there is no case or controversy between Shands and

HHS with regard to preemption, the Court should dismiss, rather than issue an advisory

opinion when the parties are not adverse.

Furthermore, if federal law preempts state law, HHS is not the proper defendant.

In the ordinary course, a private party contending that federal law preempts state law

simply brings suit against the relevant state officials or agencies; the presence of a federal

party is not required.  *See, e.g., Hughes v. Talen Energy Mktg., LLC*, 136 S. Ct. 1288 (2016)

(utility companies sued state officials, arguing that the Federal Power Act preempted

state regulatory programs); *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000)

(nonprofit sued state officials, arguing that federal sanctions on Burma preempted the

state's law regulating commerce with Burma; the United States opted to participate as

amicus curiae); *Otero v. N.Y.C. Hous. Auth.*, 484 F.2d 1122, 1130 n. 11 (2nd Cir. 1973)

(noting that the district court held that where "full relief could be afforded plaintiffs

through an injunction against the [state defendant], and no claim was made of

affirmative discriminatory action on HUD's part, the complaint against the federal

defendants should be dismissed.").  If Plaintiff files suit against the state, the federal

government may wish to provide its views on the preemption questions, but it can do so

by filing a Statement of Interest without participating as a party, as it often does.  *See* 28

U.S.C. § 517.  A court could rule on the preemption questions without HHS being in the

case as a defendant.  Given the lack of a viable claim asserted against HHS, that is the

proper course.

**3.      No case or controversy exists between Shands and HHS regarding the Equal Protection Clause.**

Shands seeks a declaration that the Florida Supreme Court's interpretation of Amendment 7 violates Shands' right to equal protection under the United States Constitution.   There is no controversy with HHS, however, because HHS has no position on this issue and is not in a position to opine on the constitutionality of Amendment 7.

The Equal Protection Clause of the United States Constitution provides that "no state shall… deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV.   Shands asserts that Amendment 7, and the *Charles II* decision, creates two classes of providers:  Florida providers subjected to PSQIA penalties due to state disclosure requirements and providers throughout the country who are not subjected PSWP penalties due to state disclosure requirements.  Dkt. 18, ¶ 39.

Even assuming this Court were to determine that the constitutionality of Amendment 7 (and the Florida Supreme Court's interpretation of it) creates two classes of providers, it must apply the rational basis test because Amendment 7 does not impair a fundamental right or affect a suspect class of persons. *City of New Orleans v. Dukes,* 427 U.S. 297, 303 (1976) (holding "[the Supreme Court's] decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to legitimate state interest").

The Equal Protection analysis requires consideration of two related but distinct issues. The court must determine: (1) whether the statute serves a legitimate governmental purpose; and (2) whether it was reasonable for legislators to believe that

the challenged classification would promote the purpose.  *See F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313-14 (1993) ("When there are plausible reasons for [the] action, our inquiry is at an end") (internal citations omitted); *Panama City Medical Diagnostic Ltd. v. Williams,* 13 F.3d 1541, 1545-47 (11th Cir. 1994) (finding that fee caps on medical services that exempted hospitalities and physician practice groups did not violate the Equal Protection Clause even if the district court provided the "arguable" justifications).  "The judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines…" *Dukes*, 427 U.S. at 303.

HHS is not the entity that is allegedly violating Shands' right to equal protection, and therefore is not the proper defendant as to the Equal Protection claim.  Rather, it is the Defendant Caro or the State of Florida that would need to advance a legitimate governmental purpose for Amendment 7 in order to satisfy rational basis review, which would justify dismissal for failure to state a claim.

Because there is no controversy between the parties as to this claim, the Court lacks subject-matter jurisdiction as to the equal protection claim and it must be dismissed.

**B.** **Plaintiff Shands has not shown it is entitled to injunctive relief.**

Shands seeks injunctive relief enjoining HHS from imposing a civil monetary penalty for disclosing PSWP, but Shands has not alleged the facts necessary to justify such relief.  "To obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is

no adequate remedy at law for the violation of this right; and (3) irreparable harm will result if the court does not order injunctive relief." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005).

Assuming it can establish a violation of its rights, Shands has not alleged facts to support the second prong, that there is no adequate remedy at law if HHS seeks to impose a penalty, because Shands has an opportunity to seek judicial review before a federal court before any penalty would become final and effective. 42 U.S.C. §§ 299b-22(f)(1)-(2), 1320a-7a(e). As noted above, Shands would also have the opportunity for administrative review. 42 C.F.R. §§ 3.504, 3.548. Shands has not alleged why this opportunity for review of this (purely hypothetical) penalty is inadequate.

Shands has also not alleged irreparable harm. Before there is even a penalty, first Shands will have to produce the documents, then the Secretary will have to exercise his discretion to initiate an enforcement action against Shands, then find a violation of the PSQIA, and then make a determination to impose a civil monetary penalty against Shands. None of these events are guaranteed to happen, so the Court cannot find that irreparable harm will occur without injunctive relief. Accordingly, Shands has not met its burden to allege facts to support a request for injunctive relief.

Furthermore, even if there is a conflict between state and federal law, due to the Supremacy Clause, the Court should not enjoin the enforcement of federal law. The proper course of action would be to enjoin state law, which is again why a federal government agency is not the proper Defendant and why HHS should not be subject to any injunctive relief.

IV.    **CONCLUSION**

This is an unusual case.  Shands seeks to project an HHS enforcement action

where none exists so that Shands can obtain the Court's review of the Florida Supreme

Court's mistaken preemption ruling in *Charles II*, but there is no such enforcement

action.  And while HHS is sympathetic to the uncertainty and practical problems that

*Charles II* has created for Shands and other providers in Florida with patient safety

programs, sympathy is not a reason to ignore Article III standing requirements.

Accordingly, HHS's Motion to Dismiss should be granted.


Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney


By:    */s/ Michael R. Kenneth*
MICHAEL R. KENNETH
Assistant United States Attorney
Florida Bar No. 44341
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone:    813-274-6000
Facsimile:     813-274-6198
E-Mail:  michael.kenneth@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Michael R. Kenneth*
Michael R. Kenneth
Assistant United States Attorney