## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

SHANDS   JACKSONVILLE   MEDICAL
CENTER,   INC.,   d/b/a   UF   HEALTH
JACKSONVILLE,   a   Florida   Non-Profit
Corporation,

      Plaintiff,

v.                                                                  Case No. 3:19-cv-00579-TJC-MCR

ALEX AZAR, in his official capacity as
Secretary of the United States Department of
Health & Human Services; and NADIA
CARO,

      Defendants.

_____/

### DEFENDANT CARO'S MOTION TO DISMISS AMENDED COMPLAINT

    Shands Teaching Hospital & Clinics, Inc., d/b/a UF Health Shands Jacksonville

("Shands"), is suing its own patient, Nadia Caro, for asserting her state constitutional right to

access adverse medical incident documents relating to her care. This Court should dismiss

Shands' amended complaint for declaratory and injunctive relief against Ms. Caro under Rule

12(b)(1) for lack of subject matter jurisdiction. Shands does not have standing to proceed

against Ms. Caro and, even if it did, federal-question jurisdiction is lacking. Alternatively, this

Court should dismiss Shands' complaint under Rule 12(b)(6) for failure to state a claim.

### MEMORANDUM OF LAW

**I.**    **Introduction.**

    Ms. Caro was a patient at Shands in June 2018. (Doc. 18 ¶9.) On February 20, 2019,

she sent a letter to Shands seeking "all adverse medical incident documents" relating to her

care. (Doc. 18 ¶10.) Ms. Caro's request is based on Article X, Section 25 of the Florida Constitution ("Amendment 7"), which grants patients "a right to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident." *See* Fla. Const., Art. X, § 25(a); (Doc. 18 ¶12.).

On May 17, 2019, Shands instituted this suit for declaratory and injunctive relief. (Doc. 1.) Shands initially sued only Alex Azar, in his official capacity as Secretary of the United States Department of Health & Human Services (HHS).[1] (Doc. 1.) However, on August 30, 2019, Shands filed an amended complaint and added its patient, Ms. Caro, as a defendant. (Doc. 18.)

In the amended complaint, Shands claims it is in possession of information that "Ms. Caro would likely believe is responsive to her pending request." (Doc. 18 ¶11.) Shands acknowledges that the Florida Supreme Court's opinion in *Charles v. Southern Hospital of Florida, Inc.*, 209 So. 3d 1199 (Fla. 2017) "appears to require production" of the "potentially responsive" materials requested by Ms. Caro. (Doc. 18 ¶¶37, 44-45.) However, Shands claims its "potentially responsive" documents are protected by the Patient Safety and Quality Improvement Act, 42 U.S.C. §§ 299b-21-299b-26 (PSQIA), which "expressly preempts all other laws governing the disclosure of PSWP." (Doc. 18 ¶¶ 11, 32.)

Shands admits in its amended complaint that the Florida state courts are bound by the Florida Supreme Court's opinion in *Charles*, which held that Amendment 7 adverse incident reports "are not privileged and confidential patient safety work product because Florida

---

[1]HHS has filed a motion to dismiss Shands' amended complaint and is arguing, among other things, that Shands is seeking an impermissible advisory opinion from this Court on the application of the Patient Safety and Quality Improvement Act. (Doc. 25.)

Statutes and administrative rules require providers to create and maintain them." 209 So. 3d at 1216; Doc. 18 ¶¶37,45. However, Shands asks this Court to issue a declaration that its "potentially responsive" information is privileged and confidential under the PSQIA, and that the PSQIA preempts Amendment 7 (i.e., that the Florida Supreme Court in *Charles* was wrong). (Doc. 18 ¶50(a),(b).) Shands further asks this Court to declare that Ms. Caro's assertion of her state constitutional right is violating its equal protection rights under the United States Constitution (Doc. 18 ¶50(c)), and to enjoin Ms. Caro "from pursuing any state-provided right to the privileged documents." (Doc. 18 ¶¶41, 55.)

## II.   Statutory, Constitutional, and Legal Background.

### A.  Patient Safety and Quality Improvement Act.

The PSQIA consists of six statutes in Part C of Subchapter VII, Chapter 6A of Title 42 of the United States Code. Pub. L. No. 109-41, 119 Stat. 424, codified at 42 U.S.C. §§ 299b-21 *et seq.* It provides for the creation and maintenance of a patient safety database of information reported to patient safety organizations (PSOs) by healthcare providers. *See* 42 U.S.C. § 299b-23. It does <u>not</u> require providers to report to PSOs; their decision to do so is voluntary. PSOs are certified entities, separate from providers, which collect, analyze, develop, disseminate, and utilize information to improve patient safety. *See* 42 U.S.C. §§ 299b-21(5), 299b-24. A related term of art is a patient safety evaluation system (PSES); it is defined as "the collection, management, or analysis of information for reporting to or by a [PSO]." *Id.* § 299b-21(6). The Act makes privileged certain information reported to PSOs. *Id.* § 299b-22.

Under the Act, information is broken down into two categories, defined by subparagraphs (A) and (B) under paragraph (7) of 42 U.S.C. §299b-21. The first category,

"patient safety work product" (PSWP), is defined in subparagraph (A) and consists of "any data, reports, records, memorandum, analyses (such as root cause analyses), or written or oral statements" that satisfy any one of three alternative criteria. *Id.* § 299b-21(7)(A). One of these criteria applies to information developed by a PSO. *See id.* § 299b-21(7)(A)(i)(II). The two other criteria are information that: (i) is "assembled or developed by a provider for reporting to a [PSO] and [is] reported to a [PSO];" or (ii) "identif[ies] or constitute[s] the deliberations or analysis of, or identif[ies] the fact of reporting pursuant to, a [PSES]." *Id.* § 299b-21(7)(A)(i)(I)&(ii). Information satisfying any of these criteria is privileged PSWP, *see* 42 U.S.C. §299b-22, unless subparagraph (B) excludes it from the PSWP definition.

The second category, defined in subparagraph (B), consists of non-privileged information explicitly excluded from the PSWP definition in subparagraph (A). *See id.* § 299b-21(7)(B). This category is broken down into two sub-categories. *Id.* § 299b-21(7)(B)(i)&(ii). The first consists of "a patient's medical record, billing and discharge information, or any other original patient or provider record." *Id.* § 299b-21(7)(B)(i). The second consists of "separate information":

> (ii) Information described in subparagraph (A) does not include information that is collected, maintained, or developed separately, or exists separately, from a [PSES]. <u>Such separate information or a copy thereof reported to a [PSO] shall not by reason of its reporting be considered [PSWP].</u>

*Id.* § 299b-21(7)(B)(ii).

The third clause of subparagraph (B) preserves, rather than preempts, certain state-law obligations. It states that "nothing in [the PSQIA] shall be construed to limit" the following:

> (I) the discovery of or admissibility of information described in this subparagraph [(B)] in a criminal, civil, or administrative proceeding;

4

(II) the reporting of information described in this subparagraph [(B)] to a Federal, State, or local governmental agency for public health surveillance, investigation, or other public health purposes or health oversight purposes; or

(III) a provider's recordkeeping obligation with respect to information described in this subparagraph [(B)] under Federal, State, or local law.

42 U.S.C. § 299b-21(7)(B)(iii).[2] "[I]nformation described in this subparagraph" means non-privileged information described in subparagraph (B), ***not*** privileged PSWP information described in subparagraph (A).[3]

### B. Florida's recordkeeping and reporting laws.

In contrast to the voluntary reporting of information authorized (but not mandated) by the PSQIA, Florida law mandates that hospitals create, collect, maintain, and develop certain patient safety information, including records of adverse incidents. *See, e.g.,* § 395.0197, Fla. Stat. (2019).

Under Florida law, incident reports are part of a hospital's mandatory internal risk management program. *See generally id.* This program must include "the investigation and analysis of the frequency and causes of . . . adverse incidents to patients" and the "development of appropriate measures to minimize the risk of adverse incidents to patients." § 395.0197(1)(a)&(b), Fla. Stat. (2019). This program also must include "[a] system for informing a patient" that he "was the subject of an adverse incident." *Id.* § 395.0197(1)(d). Most notably, a risk management program must include "an incident reporting system based

---

[2] Similarly, another PSQIA statute states that nothing in that statute should be construed "as preempting or otherwise affecting any State law requiring a provider to report information that is not [PSWP]." 42 U.S.C. §299b-22(g)(5).

[3] *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60-61 (2004) (describing how legislative manuals designate paragraphs with Arabic numerals and subparagraphs with uppercase letters).

upon the <u>affirmative duty</u> of all health care providers and all agents and employees of the [hospital] to report adverse incidents to the risk manager." *Id.* § 395.0197(1)(e).

Accordingly, a hospital's risk management program, under Florida law, must collect, maintain, and develop at least three types of adverse incident reports. First, all hospital providers and employees must report an adverse incident to the risk manager within three business days of the "occurrence;" these are called 3-day reports. *Id.* § 395.0197(1)(e).[4] Second, a hospital must submit to the Agency for Health Care Administration (AHCA) its annual report, which summarizes the adverse incident reports. *Id.* §§395.002(2), 395.0197(6)(a). Third, a hospital must submit to AHCA reports of certain adverse incidents within fifteen days of the incident; these are called Code-15 reports. *Id.* § 395.0197(7).

### C. Amendment 7.

Unlike the statutes and regulations, Amendment 7 does not mandate that hospitals create, collect, or develop any particular information, reports, or records. *See* Fla. Const., Art. X, § 25. But, if records of adverse medical incidents are created, collected, or developed, then Amendment 7 mandates that information be maintained in a manner that allows requesting patients access to it. *See id.*

---

[4] While a hospital need not submit its 3-day reports to AHCA, it must permit AHCA to "access" them. *See* Fla. Admin. Code R. 59A-10.0055(3)(b) (stating such reports "shall be made available for review to any authorized representative of [AHCA] upon request during normal working hours."); § 395.0197(13), Fla. Stat. ("[AHCA] shall have access to all licensed facility records necessary to carry out the provisions of this section."). The 3-day reports must contain specific information, including: a "clear and concise description of the incident;" a "statement of [the] physician's recommendations as to medical treatment;" and a "listing of all persons then known to be involved directly in the incident." Fla. Admin. Code R. 59A-10.0055(2).

Under Amendment 7, patients have "a right to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident." *Id.* § 25(a). An "adverse medical incident" includes "medical negligence" and "any other act, neglect, or default" of a hospital "that caused or could have caused injury to or death of a patient." *Id.* § 25(b)(3). An "adverse medical incident" specifically includes "those incidents that are required by state or federal law to be reported to any governmental agency or body" or "that are reported to or reviewed by any health care facility peer review, risk management, quality assurance, credentials, or similar committee, or any representative of any such committees." *Id.*

**D.  The Florida Supreme Court's application of the PSQIA to Amendment 7.**

In *Charles*, a hospital refused to produce certain adverse incident reports in response to a medical-malpractice plaintiff's Amendment 7 request. *Charles v. S. Baptist Hosp. of Fla., Inc.*, 209 So. 3d 1199, 1216 (Fla. 2017), *cert. denied*, 138 S. Ct. 129 (2017)). The hospital claimed its "occurrence" reports – which had been placed into a PSES pending submission to a PSO – were PSWP, and thus privileged from discovery under the PSQIA. *Id.* at 1205-06.

The Florida Supreme Court disagreed. *Id.* at 1212. First, the court held that "adverse medical incident reports are not patient safety work product because Florida statutes and administrative rules require providers to create and maintain these records and Amendment 7 provides patients with a constitutional right to access these records." *Id.* at 1211. Such reports thus fell into one of the "broad" exceptions to the PSQIA's definition of PSWP – information "collected, maintained, or developed separately, or exist[ing] separately, from a patient safety evaluation system." *Id.* And, the disclosure of such documents "fit[] squarely within the

provider's recordkeeping obligations under state law." *Id.* (citing 42 U.S.C. § 299b-21(7)(B)(iii)).

Second, the court held the PSQIA did not preempt Amendment 7 or Florida's recordkeeping and reporting laws. *Id.* at 1213-16. The PSQIA did not contain any express statement of preemption relating to Amendment 7. *Id.* at 1213. Nor did the PSQIA impliedly preempt Amendment 7 because its clear intent, "as set forth in the actual language of the [PSQIA], was for the voluntary reporting system to function harmoniously within existing state reporting and discovery laws." *Id.* at 1214-17. The court further determined, based on the PSQIA's plain meaning, "coupled with the statements of Congress and [HHS]," that it would be "antithetical" to the PSQIA's purpose if hospitals could "unilaterally decide which documents will be discoverable and which will not in medical malpractice cases." *Id.* at 1215, 1217.

The Florida Supreme Court's *Charles* opinion is consistent with the opinion of the Kentucky Supreme Court. *See id.* at 1212 ("The Kentucky Supreme Court reached the same conclusion when deciding whether records required to be reported to the State by local laws were privileged and confidential patient safety work product."). In *Baptist Health Richmond, Inc. v. Clouse*, 497 S.W.3d 759 (Ky. 2016), the court held that, although a hospital may collect both PSWP and state-mandated information within its PSES, "doing so does not relieve the [hospital] from complying with those state requirements and, to the extent information collected in the [hospital's] internal safety evaluation system is needed to comply with those

state requirements, it is not privileged."[5] *Id.* at 766. The court relied, in part, on supplemental guidance from HHS providing that "original provider records," which are exempt from the PSQIA's definition of PSWP, include state-mandated information. *Id.* at 765-66. Like the Florida Supreme Court, the Kentucky Supreme Court determined it would be "unacceptable" and inconsistent with the PSQIA to permit "hospitals to place and leave otherwise discoverable information in the [PSES] in order to shield it from discovery." *Id.* at 766.

## III.   Argument.

### A.  Shands lacks standing to proceed against Ms. Caro.

Shands, as the plaintiff seeking declaratory and injunctive relief, "bears the burden of establishing that jurisdiction exists." *Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F. 3d 1202, 1209 (11th Cir. 2015). It is axiomatic that "[u]nder Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). As such, a plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial opinion." *Id.* In the absence of this standing, "a court is not free to opine in an advisory capacity about the merits of a plaintiff's claim." *Gerber Chiropractic LLC v. GEICO General Ins. Co.*, 925 F. 3d 1205, 1216 (11th Cir. 2019).

Shands has not established that it is suffering from, or threatened with, an actual injury traceable to its patient, Ms. Caro. Ms. Caro has requested "all adverse medical incident

---

[5] The Kentucky Supreme Court had previously issued a plurality opinion on the issue. *See Tibbs v. Bunnell*, 448 S.W.3d 796 (Ky. 2014), *cert. denied*, 136 S. Ct. 2504 (2016). The plurality opinion in *Tibbs* held that the PSQIA does not "protect information 'collected, maintained or developed separately, or existing separately from a [PSES]' even if collected by a [PSES] and reported to a [PSO]." *Id.* at 803-04.

documents" relating to <u>her</u> care, and only her care. (Doc. 18 ¶9.) Amendment 7 grants her a right "to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident." Fla. Const., Art. X, § 25(a), Thus, if Ms. Caro suffered an "adverse medical incident" as defined by Amendment 7, and Shands has "records made or received in the course of business" relating to her adverse medical incident, then she is entitled to them under state law. If, however, Ms. Caro did not suffer an "adverse medical incident" as defined by Amendment 7, then Shands would not have records relating to her adverse medical incident, and she would not be entitled to them under state law.[6]

The mere fact of Ms. Caro's request for Amendment 7 documents—or her subjective belief that she is entitled to them—is not enough. By its plain language, Amendment 7 applies only to records "relating to any adverse medical incident." Art. X, § 25, Fla. Const. Yet, nowhere does Shands allege that Ms. Caro suffered an "adverse medical incident," such that she would be entitled to the requested documents. (*See generally* Doc. 18.) Shands alleges only that it has "potentially responsive" documents, and that Ms. Caro would "likely believe" that its documents are responsive to her Amendment 7 request. (Doc. 18 ¶¶11, 32.) Shands' hedged allegations are not sufficient to confer Article III jurisdiction on this Court.

Whether or not Ms. Caro suffered an "adverse medical incident," as defined by Amendment 7, is a foundational, state-law issue that will have to be addressed by this Court before reaching any federal constitutional issues. *See Mink v. Smith & Nephew, Inc.*, 860 F. 3d

---

[6] Because Ms. Caro is the defendant, she bears no burden to prove this Court's jurisdiction. In subsequent state court proceedings, Ms. Caro may attempt to prove that she suffered an "adverse medical incident." Shands' failure to meet its burden of proving Article III jurisdiction here will not preclude Ms. Caro from proving an adverse medical incident in any future state court proceedings.

1319, 1328 (11th Cir. 2017) ("Because preemption is a principle derived from the Supremacy Clause," a court "must first analyze whether each claim can stand under state law, and only then decide the preemption questions where necessary."); *Slack v. McDaniel*, 529 U.S. 473, 485 (2000) (explaining courts should "not pass upon a constitutional question" if there is another ground upon which the case may be resolved).[7]  Shands, the party invoking this Court's jurisdiction, wants Amendment 7 declared preempted and unconstitutional, but it conveniently omits any allegation that Ms. Caro suffered an adverse medical incident, such that Amendment 7 would even apply.

Shands is thus asking this Court to opine on the preemption and equal-protection issues it has raised, with no factual foundation for doing so. This would be an impermissible advisory opinion. This Court may not invalidate a state law if the plaintiff fails to establish that the challenged state law applies to the facts of the case before it. *See Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs, Ga.*, 868 F. 3d 1248, 1269 (11th Cir. 2017) ("It has long been established that decisions of this, or any, federal court must be grounded in 'a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguishing from an opinion advising what the law would be upon a hypothetical state of facts.'"); *Malowney v. Federal Declaration Deposit Group*, 193 F.3d 1342, 1347 (11th Cir. 1999) (complaint for declaratory relief should have been dismissed where plaintiff failed to

---

[7] In Florida state courts, the question of whether a medical incident is "adverse" for purposes of Amendment 7 is "ultimately the court's decision." *Baldwin v. Shands*, 45 So. 3d 118, 124 (Fla. Dist. Ct. App. 2010); *see also Bartow HMA, LLC v. Kirkland*, 126 So. 3d 1247, 1254 (Fla. Dist. Ct. App. 2013) (directing trial court to resolve "threshold question" of whether documents identified in a privilege log "relate to an adverse medical incident within the meaning of Amendment 7").

establish that challenged state statute would apply, and a declaration on its constitutionality "would [be] nothing more than a gratuitous comment without any force or effect").

Shands is hedging its bets. Shands does not like the Florida Supreme Court's opinion in *Charles*, and it would like this Court to reject it.[8] But it would like this Court to do so without an admission by Shands that Ms. Caro suffered an adverse medical incident. That way, if Shands loses before this Court, it may still argue to a state court, in any future action, that Ms. Caro did not suffer an adverse medical incident under Florida law. But the remedy for an unfavorable opinion from the Florida Supreme Court is not a declaratory action in federal district court. Shands is free to pursue its preemption and equal-protection arguments through the state courts, and eventually to the United States Supreme Court, where state law will determine whether Amendment 7 applies. But Shands is not free to pursue these arguments in federal district court where it has failed to allege that it is threatened with any injury traceable to Ms. Caro that can be redressed by a favorable court ruling. This Court should dismiss Shands' amended complaint against Ms. Caro under Rule 12(b)(1) for lack of subject-matter jurisdiction.

### B.  This Court does not have "federal question" subject matter jurisdiction over Shands' complaint for declaratory relief.

Even if Shands had alleged standing to proceed against Ms. Caro, which it did not, dismissal under Rule 12(b)(1) would still be required. This Court does not have federal-

---

[8] Shands has filed a similar suit to this one, against both HHS and a patient, in the Northern District of Florida. *See Shands v. Azar*, No. 1:17-cv-245-AW-GRJ (N.D. Fla.). The Northern District of Florida dismissed the complaint against HHS for lack of subject matter jurisdiction (Doc. 25-2), and the court has raised jurisdictional concerns regarding the complaint against Shands' patient, *see Shands v. Azar*, No. 1:17-cv-245-AW-GRJ, Docs. 105, 115 (N.D. Fla.).

question jurisdiction over Shands' declaratory action because it is premised on an anticipated action arising under <u>state law</u>, not federal law. *See* Part III.B.i., *infra,* at 13-14. Further, Ms. Caro's anticipated claim is not one of the "special" state-law claims that nevertheless turns on a substantial, disputed question of federal law. *See* Part III.B.ii., *infra,* at 14-17.

> **i.  Section 1331 does not grant jurisdiction over Shands' complaint for declaratory relief because the anticipated action arises under state law.**

To determine whether a case raises a federal question within the meaning of § 1331, this Court typically looks at the claim brought by the plaintiff. *Hudson Ins. Co. v. American Elec. Corp.*, 957 F. 2d 826, 828 (11th Cir. 1992). However, in a declaratory-judgment action, "the normal position of the parties is reversed," and this Court does "not look to the face of the declaratory judgment complaint in order to determine the presence of a federal question." *Id.* Rather, this Court "must determine whether or not the cause of action anticipated by the declaratory judgment plaintiff arises under federal law." *Id.*; *accord Fastcase, Inc. v. Lawriter, LLC*, 907 F. 3d 1335, 1340 (11th Cir. 2018). If the declaratory-judgment complaint "seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the district court." *Hudson Ins. Co.*, 957 F. 2d at 828. Thus, for federal-question jurisdiction to exist, the declaratory-judgment complaint must "show that the 'displaced coercive action'—the declaratory judgment defendant's coercive action being displaced by the declaratory judgment suit—is created  by federal law or necessarily depends on resolution of a substantial, disputed question of federal law." *City of Huntsville v. City of Madison*, 24 F. 3d 169, 172 (11th Cir. 1994).

Here, the cause of action threatened by the declaratory defendant (Ms. Caro) and anticipated by the declaratory plaintiff (Shands) can only arise under state law. Shands initiated this declaratory-judgment action in response to Ms. Caro's request for documents under the state constitution. (Doc. 18 ¶¶9-10.) And, although Ms. Caro has not yet filed any action against Shands in state court, any potential medical-malpractice claim against Shands would also necessarily arise under state law.

Shands has alleged that, based on the Florida Supreme Court's decision in *Charles*, a Florida state court would compel it to comply with Ms. Caro's request to produce to produce documents. (Doc. 18 ¶37.) Shands would like this Court to displace any state-court decision enforcing the state constitution by declaring that the Florida Supreme Court got it wrong, and that Ms. Caro is not entitled to its "potentially responsive" documents under state law because of the PSQIA. (Doc. 18 ¶50.)   But the federal issues raised by Shands are only potential defenses to any threatened state-court action by Ms. Caro, and these "possible federal defenses are insufficient to confer jurisdiction under Section 1331." *Hudson Ins. Co.*, 957 F. 2d at 828.

### ii. The unusual circumstances under which a state-law claim could nevertheless arise under federal law are not present.

Nor does Ms. Caro's anticipated state-law claim fit into the "slim" and "special" category of state-law claims that turn on substantial, disputed questions of federal law. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699, 701 (2006) (noting that the category of state-law claims that turn on substantial questions of federal law  is "slim," "small," and "special"). In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005), the Supreme Court addressed the variety of federal "arising under" jurisdiction in which "federal-question jurisdiction will lie over state-law claims that implicate

significant federal issues." The Supreme Court held that federal jurisdiction may lie over a state-law claim if that claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also Empire Healthchoice Assur.*, 547 U.S. at 701 ("*Grable* emphasized that it takes more than a federal element to open the arising under door.").

Nothing in *Grable* alters the rule that a potential federal defense is not enough to confer jurisdiction under § 1331. Rather, in *Grable*, the federal issue was an element of the plaintiff's own claim. 545 U.S. at 315. The plaintiff in *Grable* owned real property that had been seized by the IRS to satisfy a federal tax deficiency. *Id.* at 310. The plaintiff received notice of the seizure before it was sold to the defendant. *Id.* Several years later, the plaintiff filed an action in state court and asserted the defendant's title was invalid because the IRS's notice was improper under federal law. *Id.* at 311. The defendant removed the case to federal court on the basis of federal-question jurisdiction and alleged that the plaintiff's title claim was dependent on the interpretation of a federal statute. *Id.* The Supreme Court concluded that the removal was proper because the federal notice issue was "an essential element of [the plaintiff's] quiet title claim;" it "appear[ed] to be the only … issue contested in the case;" the meaning of a federal tax provision "sensibly belong[ed] in federal court;" and the exercise of jurisdiction would "portend only a microscopic effect on the federal-state division of labor." *Id.* at 315.

This case is "poles apart" from *Grable*, where it was necessary for the court to resolve a disputed issue of federal tax law for the plaintiff to establish its state-law claim. *Cf. Empire Healthchoice Assur., Inc.*, 547 U.S. at 700 (distinguishing *Grable*). Here, unlike in *Grable*,

Ms. Caro's request for documents arises under state law, and only state law. And, although Shands claims it has a potential defense to her request under the PSQIA, this defense is not necessarily dipositive. That is, Ms. Caro's Amendment 7 request (as well as any medical-malpractice suit) can be resolved without resorting to federal law.  A state court could rule in Shands' favor wholly as a matter of state law—it could conclude that Ms. Caro did not suffer an "adverse medical incident" such that Amendment 7 is inapplicable to her request. This demonstrates that the federal issues are not "necessarily" presented, and indeed, that they may never be presented at all.  There is only a <u>possibility</u> that a federal preemption issue may raise within the Amendment 7 dispute, and this possibility is not enough to confer federal jurisdiction on this Court. *See Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1297–98 (11th Cir. 2008) (concluding negligence-related claims did not necessarily raise a federal issue).

Moreover, unlike in *Grable*, Shands' declaratory action would "upset the balance between federal and state judicial responsibility envisioned by Congress." *Adventure Outdoors*, 552 F. 3d at 1302. In determining whether federal jurisdiction is consistent with "the state-federal line drawn (or at least assumed) by Congress," courts primarily consider two factors: (1) whether a federal private right of action exists, and (2) whether an exercise of federal jurisdiction would expand the number of cases brought before federal courts. *Grable*, 545 U.S. at 314-15; *accord Adventure Outdoors*, 552 F.3d at 1302.

Congress has not granted medical providers a right to sue to enforce provisions of the PSQIA. The absence of a federal private right of action militates against recognizing jurisdiction in this case. *Adventure Outdoors*, 552 U.S. at 1302-03. And, significantly, the

exercise of federal jurisdiction to resolve a potential federal issue in a fact-bound, state-law discovery dispute could greatly expand the number of cases brought before federal courts.

Discovery disputes in state-law tort actions belong in state court, not federal court. This Court should not "open the doors of the federal courts" to state-law discovery disputes that only implicate federal defenses, particularly where the availability of the federal defense is fact-bound and situation specific. *Cf. Adventure Outdoors*, 552 F.3d at 1302-03 (refusing to "open the doors of the federal courts in this circuit whenever a defamation defendant accuses a plaintiff of violating federal law."). This is especially true here, where <u>only</u> the Florida Supreme Court's interpretation in *Charles* of the PSQIA—and not any decision by this Court or any other federal court (except the U.S. Supreme Court)—would serve as binding precedent on the Florida state courts where these Amendment 7 disputes occur all the time. *See, e.g., Carnival Corp. v. Carlisle*, 953 So. 2d 461, 465 (Fla. 2007) ("Although state courts are bound by the decisions of the United States Supreme Court construing federal law, there is no similar obligation with respect to decisions of the lower federal courts."); *State v. Dwyer*, 332 So. 2d 333, 334-35 (Fla. 1976) (Florida courts bound by Florida Supreme Court decision that statute was constitutional even though federal appeals court had since declared the same statute unconstitutional).

In sum, Shands is seeking to displace a state-court decision enforcing Amendment 7. A federal declaratory action is not a jurisdictionally sound vehicle for doing so. This Court should dismiss Shands' complaint for declaratory relief for lack of subject-matter jurisdiction.

### C.  Shands has failed to state an equal protection claim against Ms. Caro.

Shands' equal protection claim is premised on the Florida Supreme Court's decision in *Charles*, which Shands alleges has "carved out an arbitrary class of health care facilities and providers" that are licensed in Florida, in disregard of the PSQIA. (Doc. 18 at ¶39.) Shands seeks a declaration that Ms. Caro's "assertion of her Amendment 7 rights, as the Florida constitutional provision is interpreted by the Florida Supreme Court, violates Shands' right to equal protection under the United States Constitution." (Doc. 18 ¶50.)

Shands' "equal protection" claim is nonsensical. Essentially, Shands is dissatisfied that Florida has different requirements for its health care providers than other states. Florida is entitled to craft its own laws for the hospitals operating within its borders, without regard to what other states are doing. This is the very essence of federalism. Moreover, the PSQIA itself expressly preserves, rather than preempts, certain state-law obligations. *See* Part II.A, *supra* at 3-5 (quoting 42 U.S.C. § 299b-21(7)(B)(iii)).

Regardless, Shands has failed to state an equal protection claim against Ms. Caro. The Equal Protection Clause provides that "no state shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. IV. Here, at the very least, Shands has failed to allege state action by Ms. Caro, a private individual. *See Draper v. Reynolds,* 369 F.3d 1270, 1278 n.14 (11th Cir. 2004) (noting that an equal-protection plaintiff "must allege that 'through state action, similarly situated persons have been treated disparately"). Shands also makes no attempt to allege how it has been treated differently that other, similar situated entities. (Doc. 18 ¶39.)  To the extent this Court determines that it has

jurisdiction over Shands' amended complaint, it should nevertheless dismiss its equal-protection claim under Rule 12(b)(6) for failure to state a cognizable claim.

### D.  Shands has failed to state a claim for injunctive relief against Ms. Caro.

Shands also asks this Court to enjoin Ms. Caro "from pursuing any state-provided right" to its documents. (Doc. 18 ¶¶41, 55.) Shands has not alleged any facts to justify such relief.

To obtain a permanent injunction, Shands must show that (1) it "has prevailed in establishing the violation of the right asserted in its complaint"; (2) "there is no adequate remedy at law for the violation of this right;" and (3) "irreparable harm will result if the court does not order injunctive relief." *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127–28 (11th Cir. 2005).

First, Shands has not alleged any independent legal right that has been violated by Ms. Caro. The fact that Shands may have "potentially responsive" documents to Ms. Caro's Amendment 7 request means nothing. (Doc. 18 ¶¶32.) Because Shands has omitted any allegation that Ms. Caro suffered an adverse medical incident, such that Amendment 7 would definitively apply, any "violation" of its "rights" under the PSQIA is purely hypothetical. *See Alabama*, 424 F.3d at 1127 ("There is no such thing as a suit for a traditional injunction in the abstract."); *see* Part II.A, *supra* at 9-12.

Second, Shands would have an adequate remedy at law for any violation of its rights. If Ms. Caro were to pursue any state-court enforcement action against Shands, then Shands could raise its PSQIA arguments in the state courts, and eventually in the United States Supreme Court, where state law will determine whether Amendment 7 applies in the first

instance. *See, e.g., Adventure Outdoors*, 552 F. 3d at 1300, 1301 ("We are mindful that state courts are generally presumed competent to interpret and apply federal law.")*; accord Empire Healthchoice,* 547 U.S. at 701 ("[T]he state court in which the personal-injury suit was lodged is competent to apply federal law, to the extent it is relevant…").

Finally, Shands has not alleged any irreparable harm. Ms. Caro has done nothing more than send Shands a letter requesting documents under the state constitution. (Doc. 18 ¶¶9-11.) There is no allegation that Ms. Caro has filed, or is intending to file, any state-court enforcement action against Shands. Thus, to the extent this Court determines that it has jurisdiction over Shands' amended complaint, it should nevertheless dismiss its claim for injunctive relief against Ms. Caro under Rule 12(b)(6).

**CONCLUSION**

This Court should dismiss Shands' amended complaint against Ms. Caro under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction or, alternatively, under Rule 12(b)(6) for failure to state a claim.

CREED & GOWDY, P.A.

*/s/Bryan S. Gowdy*
Bryan S. Gowdy
Florida Bar No. 177631
bgowdy@appellate-firm.com
Meredith Ross
Florida Bar No.120137
mross@appellate-firm.com
filings@appellate-firm.com
865 May Street
Jacksonville, Florida 32204
Telephone: (904) 350-0075
Facsimile: (904) 503-0441
*Co-Counsel for Defendant Nadia Caro*

## CERTIFICATE OF SERVICE

I certify that on November 19, 2019, the foregoing document was filed electronically using the Court's CM/ECF system, and notice of this filing will be sent by e-mail to the following parties by operation of that electronic filing system:

**Derek M. Daniels**
**Amy L. Dilday**
McCumber Daniels Buntz Hartig Puig &
Ross P.A.
4401 W. Kennedy Boulevard, Suite 200
Tampa, Florida 33609-2048
Telephone: 813-287-2822
ddaniels@mccumberdaniels.com
amiles@mccumberdaniels.com
*Counsel for Plaintiff Shands Jacksonville Medical Center, Inc.*

**Michael Kenneth**
US Attorney's Office - FLM
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone: 813-274-6000
michael.kenneth@usdoj.gov
*Counsel for Defendant Alex Azar in his official capacity as Secretary of the United States Department of Health & Human Services*

**Lindsay L. Tygart**
Coker Law
136 East Bay Street, 2nd Floor
Jacksonville, Florida 32202
Telephone: 904-356-6071
*Counsel for Defendant Nadia Caro*

*/s/Bryan S. Gowdy*
Attorney