**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SHANDS JACKSONVILLE
MEDICAL CENTER, INC., a
Florida non-profit corporation d/b/a
UF Health Jacksonville

    Plaintiff,

v.                                                                          Case No. 3:19-cv-579-J-32MCR

ALEX AZAR, in his official capacity
as Secretary of the United States
Department of Health & Human
Services and NADIA CARO,

    Defendants.

_____

**O R D E R**

    This case presents questions concerning federalism and the relationship between federal and state courts. Plaintiff Shands Jacksonville Medical Center, Inc. contends that the Patient Safety and Quality Improvement Act ("Federal Act"), 42 U.S.C. §§ 299b-21–299b-26—which allows certain healthcare organizations to document and share particular information without redress—preempts Article X, § 25(a) of the Florida Constitution, commonly referred to as Amendment 7—which provides Florida patients the "right to have access to any records made or received in the course of business by a health care facility or

provider relating to any adverse medical incident." In 2017, the Florida Supreme Court disagreed with Shands's position, holding that the Federal Act did not preempt Amendment 7. Charles v. S. Baptist Hosp., 209 So. 3d 1199, 1216 (Fla.), cert. denied, 138 S. Ct. 129, 130 (2017). Defendants Alex Azar, in his official capacity as Secretary of the United States Department of Health & Human Services ("HHS") and Nadia Caro, a former Shands patient, argue that this Court lacks subject matter jurisdiction to address the preemption issue. The Court agrees; thus, this case must be dismissed for lack of jurisdiction.

This case is before the Court on HHS's Motion to Dismiss, (Doc. 25), and Caro's Motion to Dismiss, (Doc. 33), to which Shands responded in opposition, (Docs. 28, 40). HHS's motion argues, inter alia, that Shands lacks standing. (Doc. 25). Caro's motion contends, inter alia, that the Court lacks subject matter jurisdiction. (Doc. 33). On May 8, 2020, the Court held a hearing on the motions, the record of which is incorporated herein.

**I. BACKGROUND**

**A. Facts**

Caro has requested adverse medical incident documents relating to her care at Shands. (Docs. 18 ¶¶ 9–10; 49 at 3). Shands has information that Caro believes is responsive, but Shands contends is privileged under the Federal Act. (Doc. 18 ¶ 11). Shands alleges that if it complies with Caro's request—which Florida state courts will likely compel it to do—it will violate the Federal Act

and be subjected to mandatory penalties imposed by HHS. Id. ¶¶ 45–47, 53. Thus, Shands filed this federal action seeking a declaration that: (1) certain patient safety work product ("PSWP") Caro requested is protected under the Federal Act and not subject to disclosure; (2) the Federal Act preempts Amendment 7, insofar as Amendment 7 requires disclosure of information protected by the Federal Act; and (3) Caro's assertion of her Amendment 7 rights, as interpreted by the Florida Supreme Court, violates Shands's equal protection rights. Id. ¶ 50. Further, Shands seeks to enjoin Caro from "pursuing her request for the privileged information" or in the alternative enjoining HHS from imposing a penalty against Shands for violating the Federal Act if required to disclose the information by a Florida state court. Id. ¶¶ 55–56.

### B. Amendment 7 and the Federal Act

Amendment 7 provides patients the "right to have access to any records made or received in the course of business by a health care facility or provider relating to any adverse medical incident." Art. X, § 25(a), Fla. Const. Shands alleges that "[t]he Florida Supreme Court's construction [of Amendment 7] has left health care facilities and providers essentially no discretion or defenses in providing documents in response to broad Amendment 7 requests." (Doc. 18 ¶ 15).

The Federal Act, enacted in 2005, was implemented to "facilitate an environment in which health care providers are able to discuss errors openly

3

and learn from them" by making privileged "information reported to patient safety organizations for the purposes of quality improvement and patient safety." H.R. Rep. No. 109-197, at 9 (2005). Additionally, the Federal Act authorizes HHS to impose sanctions against organizations that violate the Federal Act's privilege provisions. 42 U.S.C. § 299b-22(f) (2018). However, the Florida Supreme Court determined that "Congress did not intend to preempt state laws or Amendment 7 through the passage of the Federal Act." Charles, 209 So. 3d at 1216. Thus, Shands alleges it is stuck between a rock and a hard place—if ordered to comply with Caro's request it will either be subject to monetary sanctions by HHS if it complies, or contempt of state court if it does not.

## II. JURISDICTION

### A. Shands's Standing to Sue HHS

HHS seeks dismissal asserting that Shands lacks standing because any action HHS might take against Shands in the future is not imminent. (Doc. 25 at 9–10). Shands contends that fines by HHS are "certainly impending" and therefore it has standing. (Doc. 28 at 10–12).

To satisfy the "'irreducible constitutional minimum' of standing," the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547

(2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). "To establish injury in fact, a plaintiff must show that [it] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013)).

"When an individual is subject to the threatened enforcement of a law, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." Wollschlaeger v. Governor, Fla., 848 F.3d 1293, 1304 (11th Cir. 2017) (en banc) (alteration adopted) (quoting Driehaus, 573 U.S. at 160). "[A] plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" Driehaus, 573 U.S. at 160 (quoting Babbitt v. Farm Workers, 442 U.S. 289, 298 (1979)). The credible threat of prosecution must be objectively reasonable. See Wollschlaeger, 848 F.3d at 1304; ACLU v. The Fla. Bar, 999 F.2d 1486, 1492 n.13 (11th Cir. 1993).

In Driehaus, the plaintiffs challenged an Ohio law prohibiting false statements during a political campaign. 573 U.S. at 151–52. In determining

5

whether the pre-enforcement challenge was justiciable, the Supreme Court analyzed three factors in concluding that the plaintiffs had alleged a credible threat of enforcement. Id. at 161–64. First, the Court looked at whether the plaintiffs alleged "an intention to engage in a course of conduct arguably affected with a constitutional interest." Id. at 161 (quoting Babbitt, 442 U.S. at 298). In Driehaus, the plaintiffs asserted First Amendment rights to engage in speech they contended was prohibited by the challenged statutes. Id. (speech criticizing congressional representatives' votes for the Affordable Care Act as supporting abortion); see also Wollschlaeger, 848 F.3d at 1304 (speech by physicians asking patients about firearm ownership). Second, the Court analyzed whether the plaintiffs' "intended future conduct [was] 'arguably . . . proscribed by [the] statute' they wish[ed] to challenge." Driehaus, 573 U.S. at 162 (quoting Babbitt, 442 U.S. at 298). Third, the Court considered whether "the threat of future enforcement of the [challenged] statute [was] substantial." Id. at 164. Specifically, the Court found significant that the statute at issue had a history of past enforcement, complaints asserting a violation of the statute could be lodged by anyone, and enforcement proceedings were "not a rare occurrence." Id.

Even granting, arguendo, that Shands meets the first Driehaus requirement, Shands cannot satisfy the second or third requirements. Shands asserts it does not intend to disclose PSWP unless ordered by a court to do so,

6

Caro has revised her document request to no longer require Shands to produce PSWP, and HHS asserts that Caro's Amended Amendment 7 Request (Doc. 49 at 3) likely does not seek PSWP. Thus, HHS and Caro seem to agree that producing documents in compliance with Caro's narrowed request is not proscribed by the Federal Act. Cf. Driehaus, 573 U.S. at 162. Further, future enforcement of the Federal Act is unlikely. HHS has sole authority to impose sanctions for violating the Federal Act and, per its counsel at the hearing, it has never done so in the fifteen years since the Federal Act's passage. Despite arguing that the penalty provisions are mandatory, Shands admitted at the hearing that other hospitals have produced PSWP without being penalized by HHS.[1] Thus, even if the string of contingent, necessary prerequisites occur—Caro requests privileged documents, the state court orders Shands to produce them, and Shands produces them—it is unlikely that HHS will impose sanctions against Shands. See Driehaus, 573 U.S. at 164; cf. Wollschlaeger, 848 F.3d at 1304 (finding credible threat of prosecution where plaintiffs averred to engage in conduct proscribed by statute, Florida had vigorously defended the

---

[1] Another court within this district found that the Federal Act's penalty provisions are mandatory, meaning that HHS has no discretion and must enforce them. See Fla. Health Scis. Ctr., Inc. v. Azar, 420 F. Supp. 3d 1300, 1305 (M.D. Fla. 2019). HHS disagrees and has appealed that decision. Id., appeal filed, No. 19-14383 (11th Cir. Oct. 31, 2019).

7

challenged act, and the enforcement agency had been inconsistent in its position).

Shands's alleged injury is not "'certainly impending,' [nor is] there . . . a 'substantial risk that the harm will occur.'" Driehaus, 573 U.S. at 158 (quoting Clapper, 568 U.S. at 409). Accordingly, Shands lacks standing to bring its claims against HHS. Id.; see also Shands Teaching Hosp. & Clinics, Inc. v. Azar, No. 1:17-cv-245-MW/GRJ, 2018 WL 7350670, at *2 (N.D. Fla. June 22, 2018) (holding that a different branch of the Shands healthcare system lacked standing to sue HHS in an almost identical suit). Thus, the Court does not have subject matter jurisdiction over the claims against HHS.

### B. Subject Matter Jurisdiction Against Caro

Shands asserts claims against Caro, the party who has requested the documents from Shands, contending its claims "arise under" federal law. The Court is unpersuaded.

District courts "have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331 (2018). Most commonly, this provision is employed by plaintiffs asserting a cause of action created by federal law. Grable & Sons Metal Prods., Inc. v. Darue Eng. & Mfg., 545 U.S. 308, 314 (2005). A court determines whether a case "arises under" federal law only by looking to the plaintiff's complaint, Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 10 (1983); "federal court

8

jurisdiction cannot be based on a federal law defense or on the plaintiff's anticipation of a federal law defense," Erwin Chemerinsky, Federal Jurisdiction 304 (7th ed. 2016). "[F]ederal courts, when determining declaratory judgment jurisdiction, often look to the 'character of the threatened action.'" Medtronic, Inc. v. Mirowski Family Ventures, LLC, 571 U.S. 191, 197 (2014) (quoting Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 248 (1952)). This means that a district court looks at whether a coercive action brought by the declaratory judgment defendant to enforce its rights "would necessarily present a federal question." Id. (quoting Franchise Tax Bd., 463 U.S. at 19).

Here, Shands's declaratory judgment claim is that Caro's document request will result in a state court compelling Shands to produce information, allegedly in violation of the Federal Act. Thus, the "coercive action" is Florida law compulsion to produce documents, and Shands's defense to this action is that doing so would violate the Federal Act. This does not fit within the general bounds of federal question jurisdiction, which Shands concedes. However, Shands asserts that its claims fit into a narrow exception—the substantial-federal-question jurisdiction doctrine—that provides district courts with federal question jurisdiction over state-law cases that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, 545 U.S. at 314. This exception

9

comprises a "special and small category of cases . . . ." Gunn v. Minton, 568 U.S. 251, 258 (2013).

For this case to come within this narrow jurisdictional exception, Shands must allege a federal issue that is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Id. Even assuming, arguendo, that the first three factors are met, this Court lacks jurisdiction. "As the [Supreme] Court in Grable explained, 'even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto' when it will upset the balance between federal and state judicial responsibility envisioned by Congress." Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1302 (11th Cir. 2008) (quoting Grable, 545 U.S. at 313–14). Such is the situation here.

Unlike in Grable, this case does not involve a "rare state . . . action that involves contested issues of federal law." 545 U.S. at 319. Caro has a potential state law medical malpractice action and seeks documents in support of that claim. Congress could not have envisioned that in passing the Federal Act it was opening the federal courthouse door to what in essence is a Florida medical malpractice discovery dispute. Allowing such a result would "herald[] a potentially enormous shift of traditionally state cases into federal courts." Id.

10

The Court is not alone in reaching this decision. In an almost identical action, a different branch of the Shands healthcare system sued HHS and a former patient who requested information that Shands claimed was protected under the Federal Act. Shands Teaching Hosp. & Clinics, Inc. v. Morgan, No. 1:17-cv-245-AW-GRJ, slip op. at 2 (N.D. Fla. Mar. 26, 2020), ECF No. 122. After dismissing the claims against HHS for lack of standing, the district court requested additional briefing on subject matter jurisdiction as to the claims against the former patient, specifically on the substantial-federal-question doctrine. Id. After reviewing the briefing, the court found:

> Unlike Grable, which was a bit of a one-off, a finding of jurisdiction here would mean all document disputes involving the intersection of Amendment 7 and the [Federal Act] could be brought in federal court. Grable involved "the rare state title case that raise[d] a contested matter of federal law." 545 U.S. at 315. This, the Court recognized, meant "federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." Id. There is nothing rare about document disputes in Florida medical malpractice cases. That factor, like the others, weighs against Shands.

Id. at 8–9. Additionally, the Morgan court found that the issue was not "necessarily raised" or "substantial" to the federal system as a whole. Id. at 5–8 (citing Grable, 545 U.S. at 314–15). Thus, the court dismissed the case for lack of subject matter jurisdiction.[2]

---

[2] Shands has appealed the court's decision in Morgan. Id., appeal filed, No. 20-11555 (11th Cir. Apr. 23, 2020).

Shands's requested relief emphasizes how accepting jurisdiction would disrupt the federal-state balance. The Florida Supreme Court has already determined that the Federal Act does not preempt Amendment 7, Charles, 209 So. 3d at 1216, and the United States Supreme Court denied certiorari review, 138 S. Ct. 129, 130 (2017). Thus, even if this Court—or any federal district court—found Charles to be incorrect, such decision would only affect the parties to that specific suit.³ Because Florida state courts would still be required to follow Charles, healthcare organizations seeking protection would file federal declaratory actions every time they are faced with an Amendment 7 request that potentially conflicts with the Federal Act. This potential influx of traditionally-state cases in federal court is something Congress surely did not envision in enacting the Federal Act. See Morgan, No. 1:17-cv-245-AW-GRJ, slip op. at 9.

The Court is cognizant that another case in the Middle District of Florida with similar allegations proceeded to summary judgment. Fla. Health Scis. Ctr., 420 F. Supp. 3d at 1305; see supra note 1. However, that case does not impact the Court's jurisdiction decision here for several reasons. First, in Florida Health, HHS was the only defendant and the plaintiff, a healthcare

---

³ At the hearing, counsel for Shands said she had found no case where a federal district court had declared a decision of a state supreme court incorrect or invalid in similar circumstances.

12

organization, was actually compelled in a state court medical malpractice suit to produce documents it believed were privileged under the Federal Act. Id. Second, although the published summary judgment order states that the court had already twice considered its jurisdiction and found it sufficient, the previous orders to which the court referred only analyzed sovereign immunity, standing, and ripeness—not the "arising under" issue raised here and in Morgan. See id.; id. No. 8:18-cv-238-T-30CPT, ECF Nos. 32, 43. Thus, these differences render that case inapposite here.

Ultimately, Congress has not conferred subject matter jurisdiction upon this Court to hear Shands's claims against Caro, and they therefore must be dismissed.

Accordingly, it is hereby

**ORDERED:**

1. Defendant Alex Azar, in his official capacity as Secretary of the United States Department of Health & Human Services's Motion to Dismiss (Doc. 25) is **GRANTED**.

2. Defendant Nadia Caro's Motion to Dismiss (Doc. 33) is **GRANTED**.

3. This case is **DISMISSED without prejudice** for lack of subject matter jurisdiction.

4. The Clerk shall terminate all pending motions and deadlines and close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 10th day of June, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

jjb
Copies to:

Counsel of record